## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michael R. George,                                    Civil No. 15-3349 WMW/JJK

                  Petitioner,

v.                                                    **<u>REPORT AND RECOMMENDATION</u>**

Denese Wilson, Warden,

                  Respondent.


This matter is before the court, United States Magistrate Jeffrey J. Keyes, on petition for writ of habeas corpus under 28 U.S.C. § 2241 by Michael R. George, a federal prisoner located at the Federal Correctional Institution at Sandstone, Minnesota ("FCI-Sandstone"). Petitioner, who appears pro se, alleges that he was wrongly deprived of 41 days of good time credit as the result of a prison disciplinary proceeding in which he alleges his statutory and constitutional rights were violated. The matter has been referred to the magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, it is recommended that Petitioner's claims be denied and the case be dismissed with prejudice on the merits.

## I.   BACKGROUND AND CLAIMS

Petitioner Michael R. George is a federal prisoner, presently incarcerated at FCI-Sandstone. He is serving a 77-month sentence on a conviction for

possession with intent to distribute marijuana.  (Doc. No. 5; Decl. of Ernie

Lafferty, ¶ 7.)  He was sentenced on November 2, 2010 in United States District

Court for the Western District of Wisconsin and has a projected release date of

November 14, 2016, via good conduct time release. (*Id.*, Ex. B.)  The underlying

incident and disciplinary proceedings occurred while Petitioner was incarcerated

at FCI-Oxford, Wisconsin.

The Petitioner's discipline resulted from the discovery of a prohibited tool,

*i.e.*, a yellow handled Snap-on brand nut driver, which was found in a shakedown

of a cell area assigned to the Petitioner and three other prisoners.  The search

took place at about 12:30 p.m. on September 16, 2014.  (*Id.*, ¶ 9, Ex. D.)  The

search was prompted by the discovery of a set of cell phone ear buds on a

sidewalk near a building emergency exit, and the subsequent discovery of an

MP-3 player outside the open cell window of the cubicle assigned to these

prisoners.  (*Id.*)  On finding the MP-3 player, a corrections officer searched the

cell area while the Petitioner and his three cell mates were present.  (*Id.*)  The nut

driver was found on a chair covered by a blanket.  (*Id.*)  The tool was a size that

could be used to remove ceiling registers for heat ducts.  (*Id.*)

An investigation was promptly commenced and the Petitioner was provided

a copy of the Incident Report at 9:15 p.m. on September 16, 2014.  (*Id.*, Ex. D.)

At that time the Petitioner was advised of his rights in regards to a prisoner

discipline matter,[1] and he made the statement, "I'm not going to bullshit you; I'm taking heat for the nut driver, it's mine.  It doesn't belong to the other guys in the cubicle."  (*Id.*, ¶ 10, Ex. D.)

An initial hearing was conducted by a Unit Discipline Committee ("UDC") on September 18, 2014.  (*Id.*, ¶ 11, Ex. E.)  At that time the Petitioner was advised of his rights: (1) to have a written copy of the charges; (2) to have a staff member represent him at a hearing before a Discipline Hearing Officer ("DHO"); (3) to call witnesses and present documentary evidence; (4) to present a statement or remain silent (with the condition that silence may be used to draw an adverse inference); (5) to be present at the discipline hearing; (6) to be advised of the DHO's disposition in writing; and (7) to administratively appeal the DHO's decision.  (*Id.*)  At the UDC hearing the Petitioner requested that Officer Marshall serve as his staff representative at the DHO hearing, but he indicated that he did not wish to call witnesses.  (*Id.*, ¶ 11, Ex. F.)  The Incident Report categorized the offense as a Code 108 Prohibited Act, Possession, Manufacture, Introduction or Loss of a Hazardous Tool (Doc. No. 1, Compl., Ex. A), but the UDC recommended that the offense be reduced to a Code 305 violation, Possession of

---

[1] The statement of rights is: "You are advised of your right to remain silent at all stages of the disciplinary process but are informed that your silence may be used to draw an adverse inference against you at any stage of the institutional disciplinary process.  You are also informed that your silence alone may not be used to support a finding that you have committed a prohibited act."  (*Id.*, Ex. D.)

Anything Not Hazardous.[2]  (*Id.*)

A DHO hearing was held on September 25, 2014.  (*Id.*, ¶ 12, Ex. F.)  At the hearing the Petitioner stated, "I'm taking responsibility but I don't know what color the tool was."  (*Id.*, ¶ 13, Ex. G.)  The staff representative stated that he had reviewed the pertinent documents and found them to be appropriate.  (*Id.*)  The DHO made his decision on the basis of the Petitioner's statement, staff memoranda, and a photo of the tool.  (*Id.*)  The DHO determined that the greater weight of evidence supported the Code 108 charge that the nut driver was a hazardous tool and the Petitioner committed the prohibited act of possessing the tool.  (*Id.*, ¶ 15, Ex. G.)  Sanctions assessed to the Petitioner were (1) disallowance of 41 days good conduct time; (2) 90 days loss of telephone privileges; (3) 90 days loss of e-mail; and (4) 90 days loss of visitation.  (*Id.*, ¶ 14, Ex. G.)

The Petitioner challenges the DHO's determination that he should be disciplined for a Code 108 violation, Possession of a Hazardous Tool, and argues

---

[2] BOP Program Statement 5270.09, *Inmate Discipline Program*, describes a Code 108 prohibited act as:

> Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.*, hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device).

(Lafferty Decl., Ex. A at 44.)

that the action should have been considered under Code 305, Possession of Anything Not Authorized, because the nut driver is not properly considered a hazardous tool and the UDC members had recommended that the incident be construed as the lesser Code 305 violation.  (Reply 1.)

## II.    HABEAS CORPUS RELIEF UNDER 28 U.S.C. § 2241

Generally, a person in federal custody can challenge the legality of his confinement by way of a § 2241 habeas corpus petition filed in the district in which he is confined.  *Webber v. Jett*, No. 13-654 ADM/JJK, 2013 WL 3867199, *2 (D Minn. July 25, 2013) (citing *Archuleta v. Hendrick*, 365 F.3d 644, 647-48 (8th Cir. 2004).  A writ of habeas corpus is a means to provide relief for a prisoner who is challenging the fact or duration of confinement and seeks immediate or speedier release.  *Id.* (citing *Otey v. Hopkins*, 5 F.3d 1125, 1130 (8th Cir. 1993)); *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 812 (10th Cir. 1997) (holding that federal inmate's challenge to loss of good time credits is properly brought under § 2241 because it is a challenge to an action affecting the fact or duration of the petitioner's custody).

Respondent acknowledges that Petitioner has exhausted his administrative remedies with respect to his claims in this case.  In addition, Respondent agrees that jurisdiction under 28 U.S.C. § 2241 is proper because the prisoner is challenging a disciplinary matter that affects the duration of confinement.  Venue is proper in the District of Minnesota because FCI–Sandstone, the location of the

Petitioner's incarceration, is in this District.  Warden Wilson is appropriately named the Respondent.

## III.   ANALYSIS

Petitioner alleges that his constitutional rights to due process and his statutory right to good time credits under 18 U.S.C. § 3624(b) were violated because he was incorrectly found guilty of possessing a hazardous tool, a Code 108 offense.  The nut driver, he claims, was a Class B non-hazardous tool. Thus, there was insufficient evidence to support the Code 108 violation which resulted in the disallowance of 41 days of good time credit.  He requests that the Court order the BOP to expunge the incident report and restore 41 days of lost good time.

Petitioner does not challenge the BOP's authority to establish disciplinary guidelines (28 C.F.R. § 541.1), and he does allege violation of due process or other rights with respect to the disciplinary procedures in this case.  (Lafferty Decl., Ex. A; BOP Program Statement 5270.09, Inmate Discipline Program, Chapter 5.)  Nor does he assert any claim that he did not possess the prohibited item, *i.e.*, the nut driver, that led to his loss of 41-days good time credit.  Petitioner simply claims that the DHO improperly classified the nut driver as a Class A "hazardous" tool, rather than a Class B "non-hazardous" tool, as generally defined under BOP Program Statement 5500.13, Correctional Services

Procedural Manual, Chapter 2, Section 201 (Reply, Ex. A),[3] and as expressly
provided in FCI-Oxford, Wisconsin Institution Supplement 5513.15L, Tool Control.
Respondent, on the other hand, contends that a nut driver is classified as a Class
B tool only if proper procedures for access to the tool, as provided in Supplement
5513.15L, are followed (Laffery Decl. ¶ 17).  Otherwise, the tool may be classified
as a hazardous tool for disciplinary purposes.  In his declaration in support of this
case, the DHO, Ernie Lafferty, described how possession of a Class B non-
hazardous tool like a nut driver can trigger a Code 108 violation:

> "The nut driver is classified as a Class B tool according to the
> Institution Supplement, as long as the access procedures in the
> Supplement are followed.  Class B tools are 'less hazardous,' but not
> completely non-hazardous.  The BOP's tool accountability
> procedures do not allow just any inmate to possess a Class B tool.
> The inmate must have staff permission to possess the tool, to use
> the Class B tool on a specific repair, and then promptly return it.  All
> tools must be accounted for on a regular basis, and if any tools are
> missing, the inmates responsible for the tools are written an incident
> report for a Code 108 violation. The Bureau implemented these
> accountability procedures because an inmate's use, or even mere
> possession, of a Class B tool without staff supervision enables him to
> engage in fraudulent and unmonitored acts, such a storing

───────────────

[3]  Section 201 states that all tools are to be classified as Dangerous (Class
AA), Hazardous (Class A), or Non-hazardous (Class B).  Dangerous tools include
metal cutting blades, bolt cutters, and Ramset guns, *i.e.* power nailers, which are
to be stored under secured conditions and are absolutely unavailable to prisoners
except under constant visual staff supervision.  Hazardous tools are those which
could be used for escape purposes, to manufacture or serve as a weapon
capable of doing serious bodily harm, or may be hazardous to institutional
security or personal safety.  Class B non-hazardous tools are those which are
non-hazardous by nature.  Section 201.2 instructs each BOP institution to
specifically describe, list and classify each tool used at the institution in its
Institution Supplement.  (Reply, Ex. A.)

> contraband in air vents.  Such acts could be used to secretly
> coordinate a prison escape or engage in other activity that is
> hazardous to prison security or the safety of staff or inmates.  There
> was no indication [Petitioner] possessed the nut driver through these
> accountability procedures."

(Laffery Decl. ¶ 17.)

**Due Process.**  In a prison disciplinary setting in which a prisoner may be

subject to loss of good time credit, due process requires that an inmate must

receive: 1) advance written notice of the charges against him; 2) an opportunity to

call witnesses and present documentary evidence, when consistent with safety

and correctional goals; and 3) a written statement from the fact finder as to the

evidence relied upon and the reason for the disciplinary action taken.  *Espinoza*

*v. Peterson*, 283 F.3d 949, 951-52 (8th Cir. 2002) (citing *Superintendent v. Hill*,

472 U.S. 445, 454 (1985)).  A reviewing court will not reassess the credibility of

witnesses or re-weigh the evidence.  *Gomez v. Graves*, 323 F.3d 610, 612 (8th

Cir. 2003).  Rather, a reviewing court's only inquiry is whether there is some

evidence to support the sanction.  *Id.*  The some evidence standard does not

mandate examination of the entire record to satisfy due process.  *Espinoza v.*

*Peterson*, 283 F.3d 949 at 952.

Here, the Petitioner was provided a Notice of Discipline Hearing before the

DHO, along with a statement of Inmate Rights at Discipline Hearing, on

September 18, 2014.  (Lafferty Decl., Ex. E and F.)  He was provided staff

representation, and he presented no witnesses or exhibits at the hearing on

September 25, 2014.  (*Id.*, Ex. G.)  And the DHO made a written statement of the sanctions imposed, along with the evidence and reasons for such sanctions.  The DHO reviewed the Incident Report and a photo of the recovered contraband.  (*Id.*, Ex. D.)  He referenced the Petitioner's prior admission to possession of the tool, the lack of any defense or statement to the UDC, and Petitioner's testimony at the DHO hearing, in finding that the greater weight of the evidence supported the charge that the Petitioner committed the prohibited act of possession of a hazardous tool.  (*Id.*, Ex. G.)  Specifically, as the findings and sanctions pertain to the determination that the Petitioner committed a Code 108 violation of possessing an hazardous tool, the DHO report stated that the imposed sanctions were meant to reflect the seriousness of the infraction of possessing a tool that could be used in an escape or escape attempt or could be used in a manner that threatened the safety of staff and inmates.  (*Id.*)[4]

The Petitioner's right to due process with respect to disciplinary proceedings was not violated as a result of the DHO classification of the nut

---

[4] In discussing the Petitioner's initial admission to possession of the nut driver, the DHO noted that all inmates assigned to a cell are responsible for keeping the area free of contraband, and that inmates of the cell are accountable for items found in common areas.  The DHO report stated that "[s]tatements of taking responsibility are found credible when there is corroborating evidence in conjunction with the admission.  In this case, there was no corroborating evidence to support the admission and in fact your lack of knowledge concerning the tool lessened the credibility of your statement."  The statement appears to be an indication that the DHO felt that the Petitioner was taking the blame for another prisoner's violation, and its significance as to whether it affected the findings and sanctions, is unclear.

driver as a hazardous tool.  "Due process requirements are satisfied if some

evidence–that is, *any* evidence in the record–supports the disciplinary decision.

*Rudd v. Sargent*, 866 F.2d 260, 262 (quoting *Superintendent v. Hill*, 472 U.S.

445, 455-56.  The "some evidence" standard is satisfied:

> if "there is some evidence from which the conclusion of the
> administrative tribunal could be deduced...." *United States ex rel.*
> *Vajtauer v. Comm'r of Immigr.*, [273 U.S. 103, 106 (1927)].
> Ascertaining whether this standard is satisfied does not require
> examination of the entire record, independent assessment of the
> credibility of witnesses, or weighing of the evidence.  Instead, the
> relevant question is whether there is <u>any</u> evidence in the record that
> <u>could</u> support the conclusion reached by the disciplinary board.

*Superintendent v. Hill,* 472 U.S. at 455-56 (emphasis added).  The findings

of a prison disciplinary authority cannot be overturned even where the

supporting evidence "might be characterized as meager," or wholly

circumstantial. *Id.* at 457.  Simply stated, where there is at least some

evidence to support the hearing officer's decision, and the disciplinary

action is not wholly insupportable, the requirements of due process are

met.

The court concludes that the minimal "some evidence" standard is

met in this case.  The DHO received undisputed evidence that the

Petitioner had a tool in his cell that he was not permitted to possess.

Classification of the nut driver as hazardous or non-hazardous depended

on the circumstances of how this tool came into Petitioner's possession

and whether Petitioner was authorized to use it.  Petitioner offered no explanation as to how he came into possession of the nut driver or why he continued to possess it.  There is no evidence that Petitioner had ever been authorized to possess the nut driver, and the tool was not being used under any sort of BOP staff supervision.  Pursuant to the statement of inmate rights that was provided to him, the Petitioner was advised that he had a right to remain silent at the discipline hearing, but that his silence could be used to draw an adverse interest against him.  (Lafferty Decl., Ex. E).  Here, the DHO properly drew an inference that the nut driver could be used as a weapon or to facilitate an escape, and this inference constitutes some evidence that the nut driver is properly classified as a Class A hazardous tool in this case.  The evidence is sufficient to support the disciplinary decision and sanctions, and the Petitioner has no constitutional grounds for relief on evidentiary grounds.  See *Goff v. Dailey*, 991 F.2d 1437, 1442 (8th Cir. 1993) (the outcome of prisoner disciplinary proceedings will be upheld by the federal courts if it is supported by some evidence in the record).

Based upon the foregoing discussion, along with the pleadings, memoranda, declarations, and exhibits, this Court makes the following:

## ORDER AND RECOMMENDATION

1.  It is hereby **ORDERED** that Petitioner's Motion Requesting Leave

of the Court to File a Reply Brief to Respondent's Response (Doc. No. 7) is

**GRANTED**.  A reply brief and exhibits were filed and the materials were

reviewed by the Court in its consideration of this matter.

2.  It is hereby **RECOMMENDED** that Petitioner's Application for

Habeas Corpus Relief under 28 U.S.C. § 2241 (Doc. No. 1) be **DENIED,**

and that this matter be **DISMISSED** with prejudice.

Dated:   March 21, 2016

 s/ *Jeffrey J. Keyes*
Jeffrey J. Keyes
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 5, 2016**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.